1
2
3
4
5
6
7

8          **UNITED STATES DISTRICT COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  CITY OF SANTA CLARITA, | ) CASE NO. CV 04-7355 AHM (FMOx) |
| 12          Plaintiff, | ) |
| 13      v. | ) ORDER AWARDING ATTORNEYS' |
| 14  LOS ANGELES COUNTY | ) FEES |
| 15  BOARD OF SUPERVISORS, et al., | ) |
| 16          Defendants. | ) |
| 17 | ) |
| 18  _____ | ) |

19                          **I.**

20                    **CEMEX MOTION**

21          The Court GRANTS the motion of Defendant CEMEX, Inc. ("CEMEX")

22  for the award of reasonable attorneys' fees, in the amount of $524,476.60. This

23  award includes the supplemental request for compensation for preparing the

24  motion for fees.

25          It is unnecessary for the Court to reiterate the standard principles

26  governing this motion, given that the parties themselves have cited the applicable

27  cases. The Court has considered and applied the teachings, principles and

28  holdings of *Alyeska Pipeline Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59

1    (1975) (attorneys' fees may be awarded where an action is filed in bad faith);

2    *Chambers v. Nasco, Inc.*, 501 U.S. 32, 45-46 (1991) (inherent power of court to

3    punish litigation abuses requires litigant to have engaged in bad faith); and *Fink*

4    *v. Gomez*, 293 F.3d 989, 992 (9th Cir. 2001) ("For purposes of imposing

5    sanctions under the inherent power of the court, a finding of bad faith 'does not

6    require that the legal and factual basis for the action prove totally frivolous;

7    where a litigant is substantially motivated by . . . obduracy . . . the assertion of a

8    colorable claim will not ban the assessment of attorneys fees.'")  (internal citation

9    deleted.)[1]  I have also reviewed attorney fees award cases that the parties cited.

10   *E.g., Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933 (1983); *Kerr v. Screen*

11   *Extras Guild*, 526 F.2d 67 (9th Cir. 1975), *cert. denied*, 425 U.S. 951, 96 S.Ct.

12   1726 (1976);  *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 982 (9th Cir.

13   2008) (court must calculate awards for "fees on fees" using the "lodestar method"

14   and may make percentage reductions in the amount only after calculating the

15   lodestar.)  This ruling is based upon the following findings and considerations.

16          1.  This lawsuit was not only ill-advised but was brought in bad faith,

17   within the meaning of that term set forth in the above-cited cases.[2]  In making

18   that finding, I incorporate herein the findings and conclusions I previously set

19   forth in my June 17, 2008 Order denying the summary judgment motion of

20   Plaintiff City of Santa Clarita ("the City") and granting the motions for summary

21   judgment of not only CEMEX, but also the County of Los Angeles and the

22   United States Department of the Interior.  In particular, I note again the

23   _____

24   [1]  "Obdurate" means "resistant to persuasion or softening influences."  It is
     synonymous with "unyielding."  Webster's Ninth New Collegiate Dictionary.
25   "Obdurate" certainly describes the City's conduct, as is set forth below.

26   [2] The Court makes this finding of bad faith with no reservation; it is not a close call.
27   For that reason, it is unnecessary to determine whether CEMEX's burden of proving
     bad faith must be as demanding as "clear and convincing."  *See F.J. Hanshaw*
28   *Enterprises, Inc. v. Emerald River Development Inc.*, 244 F.3d 1128, 1143, n.11 (9th
     Cir. 2001).

1  following:

2         In its motion for summary judgment, the City seeks a "writ of
   mandate" ordering that the County rescind its Project and that: (1)
3  the EIR analyze "peak mine production" rate impacts on traffic, air
   quality, water resources and biota; (2) the EIR analyze new well
4  impacts on water resources and biota; (3) a revised EIR addressing
   all significant new information be recirculated for public review,
5  comment, and City consultation; and (4) all feasible mitigation
   measures be imposed to reduce Project impacts to less than
6  significant levels.  (City Mem. at p.3.)  If "these mandates cannot
   coexist with the intended benefits of the Consent Decree," the City
7  argues, then "the decree should be dissolved."  (*Id.*)

8                                  * * *
          Here, it has been previously determined that the County's
9  decision to approve the Project adequately reflected independent
   review and judgment.  *The City's allegations in* its First Cause of
10 Action-- that the County abdicated its responsibilities under CEQA
   in entering the Consent Decree and issuing the Final EIR-- *are*
11 *virtually identical to the objections that the City raised in its*
   *opposition to the Consent Decree.*  The City argued then that in
12 entering into the decree the County "contract[ed] away public rights
   under threat of personal embarrassment and other sanction."  (AR
13 29359.)  *The City continues to ignore the mediation process that*
   *produced the Consent Decree and the concessions from CEMEX*
14 *that the County negotiated.*  Thus, in his May 3, 2004 Order granting
   the motion for the entry of the Consent Decree, Judge Tevrizian
15 noted the "intense and long nine-month vigorously debated court
   supervised mediation process," the "adversarial, arm's length"
16 negotiations and the "exchanges of numerous proposals and counter-
   proposals among counsel."  (AR 29356, 29360.)  In that Order,
17 Judge Tevrizian concluded that "contrary to the unsubstantiated
   allegations of the City, the Consent Decree did not arise as a result
18 of 'duress' or 'coercion'" (AR 29359) and that "the City [was]
   unable to demonstrate that CEQA requires public participation of
19 further environmental review if a public agency reverses itself on a
   project in light of litigation (AR 29376-77)."  Judge Tevrizian also
20 stated that:

21
   given the Administrative Record before the Court and the long
22 history of environmental analysis conducted on this Project, it is this
   Court's finding that the Consent Decree sets forth a Project that
23 complies with all substantive requirements of CEQA, fully identifies
   significant environmental effects and mitigations, and which, in fact,
24 provides additional environmental and other benefits to the County
   as a whole and the City in particular.

25
   (AR 29365.)  *Judge Tevrizian "reviewed the record and [found] that*
26 *the County's new Board Findings are supported by substantial*
   *evidence such that it does not violate CEQA compliance . . . ."*  (AR
27 29376-77.)

28

                                    3

1

2

3

4

*The Ninth Circuit, too, concluded that the Consent Decree was "fundamentally fair, adequate and reasonable,"* given that "the parties negotiated the consent decree in good faith and at arm's length" and "[i]n exchange for approving CEMEX's project, the county obtained significant environmental concessions." *CEMEX, Inc. v. County of Los Angeles*, 166 Fed.Appx. 306 (9th Cir. 2006). These findings are fully supported by the record.

5

6

\* \* \*

7

8

9

10

11

*The City nevertheless contends that a comparison of the County's pre-litigation denial findings with the Consent Decree findings demonstrates that the County "sacrificed its independent judgment and the environment for economic and/or political concerns." (City Mem. at p.47.)* The City asks the Court to infer from the County's decision to approve the project, after initially denying it, that it abdicated its duties as the lead agency under CEQA to CEMEX. *Nonsense.* If settling a lawsuit is sufficient to show that a lead agency abdicated its CEQA obligations, would any CEQA case ever settle?

12

13

14

15

16

17

18

19

20

Even apart from principles of issue preclusion, on the merits the City has not established, and cannot establish, that the County "abused its discretion" and violated CEQA by approving the Project pursuant to the terms and conditions of the Consent Decree. Given that it is indisputable there were more than thirteen months of public review and comment and nineteen public hearings on the Project, and that the compromises leading to the Consent Decree resulted from nine months of mediation, that Judge Tevrizian approved it and that the Ninth Circuit affirmed, substantial evidence supports the County's decision to approve the Project. The Court finds that the administrative record contains sufficient relevant information that a fair argument can be made to support the County's decision. *See* CEQA Guidelines § 15384(a). Thus, for all the foregoing reasons, the Court DENIES the City's motion and GRANTS summary judgment in favor of the County, the United States and CEMEX as to the City's first cause of action.

21

22

\* \* \*

23

24

25

26

27

28

[As to the City's second cause of action,] [i]n the ESA lawsuit, the City argued that "there is not enough water available for both the [] Project and the unarmored threespine stickleback" and that "the mitigation measures developed by [CEMEX] will not adequately offset the significant impacts the [] Project will have on the stickleback." (CEMEX RJN. Ex. S. p.32.) Judge Tevrizian concluded that biological opinions evaluating the project "acknowledge the possible impact on Stickleback from pumping and appropriately focus mitigation measures on ensuring that pumping does not reduce the quality of Stickleback habitat downstream." (CEMEX RJN. Ex. Z. p.18.) As noted above, Judge Tevrizian's dismissals of the NEPA and ESA lawsuits were upheld on appeal.

4

1    *The City therefore has no basis or right to pursue these allegations all over
     again.*

2

3          The City's Third Cause of Action claims that the County erred
     in failing to recirculate the EIR in light of "significant new
4    information [that] ha[d] not been adequately considered in the
     review process, pertaining to several important factors." (Petition ¶
5    75.) . . .  The City raised virtually identical arguments in its
     opposition papers to CEMEX's motion for the entry of the Consent
6    Decree.  However, in his May 3, 2004 Order granting the motion,
     Judge Tevrizian concluded that . . . "no significant new information
7    exists as the City claims it does, and no change in circumstances
     relevant to environmental concerns and bearing upon the proposed
8    action or its impacts has occurred.  Accordingly, reanalysis or
     recirculation is not required at this time."  (AR 29376.)  Now, more
9    than four years later even in the motions before this Court, the City
     cites no "significant new information" resulting from any
10   developments in the past four years.

11         In addition, in the NEPA lawsuit, the City also argued that
     "new significant information" had emerged, including information
12   related to traffic impacts, additional wells, and project acceleration.
     (CEMEX RJN. Ex. BB p.32-35.)  *In that case, Judge Tevrizian ruled*
13   *that the City's claims were "barred by res judicata, collateral*
     *estoppel, or other procedural bases" as a result of being raised or*
14   *having not been raised in the ESA or Consent Decree lawsuits.*
     (CEMEX RJN. Ex. II p.29.)  *That must be the result here too, as the*
15   *following analysis shows.*

16                                     * * *

17         [As to the City's Fourth Cause of Action,] finally, in the
     NEPA lawsuit, the City asserted that "[t]he FEIS' analysis of the
18   Project's impacts on water availability and water resources issues is
     wholly inadequate."  (CEMEX RJN, Ex. BB. p.28)  Judge Tevrizian
19   found that "[t]he City's claims that the Project's water usage would
     exceed the purported 25% threshold needed for the stickleback is
20   incorrect."  (*See* CEMEX RJN, Ex. II. p.17.)  That determination
     precludes relitigation of this issue now.  The relief that the City
21   seeks in this action directly conflicts with Judge Tevrizian's findings
     in the Consent Decree.  The Consent Decree specifically provided
22   that the County fully complied with CEQA (AR 29365, 29434-35)
     and that any further environmental review by the County is
23   preempted (AR 29366, 29431, 29446).  The Consent Decree also
     provided that "the County is further enjoined from further delaying,
24   frustrating, or otherwise interfering with the implementation of the []
     Project, including through delays in approving the [] Project" and
25   "from conducting further environmental review for the [] Project."
     (AR 29445.)

26
           Federal courts "have adopted a flexible standard for
27   modifying consent decrees when a significant change in facts or law
     warrants revision of the decree and the revision is tailored to the
28   changed circumstance."  *Rufo v. Inmates of Suffolk County*, 502 U.S.

                                       5

1
2
3
4
5
6

367, 393 (1992).  "[A] party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree." *Id.* at 383.  *Here, the City fails to point to any "significant change in facts or law" that warrants modification of the Consent Decree, which nine months of mediation produced, Judge Tevrizian approved, and the Ninth Circuit upheld.  The City's main argument is that the Consent Decree should be modified because the County abdicated its duties under CEQA to CEMEX by entering into it.  As discussed above, this argument is without merit.* (All emphases added.)

7
8
9
10
11
12
13
14
15

The excerpts quoted above reflect that in this lawsuit the City merely repeated many of its previously-rejected contentions or "massaged" them in an effort to make them appear slightly different, when in fact the City was really intent on delaying the commencement of work on the sand and gravel mine.  That is why I noted at the beginning of the June 17, 2008 order, "[A]ll of the arguments that the City now raises in support of its motion have been raised, argued, and adjudicated against the City in the prior lawsuits.  Thus, under the doctrines of claim and issue preclusion, the City has already had its day in court and is now barred from raising these claims and issues again."

16
17
18
19
20
21
22
23
24
25

On this motion, to avoid a finding of bad faith the City cites *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 2600-01 (1976) for the proposition that "to be in bad faith, there must be much more than simply facts found against the party, even facts stubbornly maintained that prolong the litigation; that alone is not obdurate obstinacy."  That is not quite what *Runyon* stated.  Moreover, in *Runyon* the claim of the successful civil rights litigants who were seeking attorneys fees was that the respondent schools had denied that they had discriminated, not that respondents had persisted in arguing "facts" and contentions that they had previously failed to establish, as the City did in this case.[3]

26
27
28

[3] Even on this motion, the City still appears intent on making outlandish arguments.  Thus, for example, it asserts - - without citation to any precedent or authority whatsoever - - the nonsensical proposition that "a CEQA case such as this is inherently incapable of supporting a finding of  frivolity or bad faith." (Opp'n, at

1          2.  The City argues strenuously that to award attorneys fees to CEMEX

2   "when all the City did was prosecute a CEQA Action [sic] as permitted under

3   California law would necessarily chill future enforcement [   ]   CEQA."  [sic]

4   Not so.  Every party seeking to enforce CEQA or any comparable environmental

5   statute - - indeed, *all* statutes, even anti-discrimination laws - - has the duty to

6   comply with applicable professional and judicial requirements.  Merely

7   purporting to promote or protect a societal "good" or interest reflected in a statute

8   does not immunize a plaintiff from the consequences of litigation abuse.  The

9   City should have known that, given that the Ninth Circuit upheld Judge

10  Tevrizian's award of attorneys fees against the City in the *NEPA* lawsuit. *City of*

11  *Santa Clarita v. United States Department of Interior*, 269 Fed.Appx. 502, 505

12  (9th Cir. 2007).

13         3.  Surprisingly, the City has not even addressed, much less challenged, the

14  evidence that CEMEX introduced in support of the hefty amount of fees which it

15  seeks to recover.  Once CEMEX submitted evidence in support of the hours

16  worked on the underlying case, the burden shifted to the City to "challeng[e] the

17  accuracy and reasonableness of the hours charged or the facts asserted by the

18  prevailing party in its submitted affidavits."  *Gates v. Gomez*, 60 F.3d 525, 534-

19  535 (9th Cir. 1995).  Therefore, the City has waived any objection.  In any event,

20  I find that the hourly rates that CEMEX's counsel have charged and for which

21  they seek reimbursement are in fact reasonable and consistent with the standards

22  applicable to their kind of practice, their skill and experience and the prevailing

23  legal rates in Los Angeles and San Francisco Counties.   Although the Court

24  cannot possibly scrutinize all the entries of all the time timekeepers and, does not

25  have to do so, *see Evans v. Evanston*, 941 F.2d 473, 476 (7th Cir. 1991), *cert*

26  _____

27  page six.)  As factor two on this page notes, there is nothing in CEQA or any other
    statute that prevents a litigant from acting in bad faith - - and nothing that entitles
28  him to get away with it if he does.

*denied*  112 S.Ct. 3028 (1992), based on my review, it does not appear that CEMEX's capable counsel devoted excessive time to their work.

CEMEX sought $488,895.60 in its motion.  In its reply memorandum, it requested an additional $35,581.00 for a total of $524,476.60.  (Part of the additional sum was for fees incurred in drafting its motion for fees.)  It is that amount which I award.

## II.

## COUNTY AND SUPERVISORS' MOTION

The issues and arguments that the City raised in its opposition to the motion of Los Angeles County and its Board of Supervisors are the same as those raised in CEMEX's motion.  Accordingly, I incorporate the foregoing analysis and findings, add the finding that the fees of counsel for the County and Supervisors are reasonable, and award $57,599.72 in fees to the County and its Supervisors.

No hearing is necessary.  Fed. R. Civ. P. 78; L.R. 7-15.


IT IS SO ORDERED.


DATED:  November 14, 2008                          _____
                                                                            A. Howard Matz
                                                                            United States District Judge

8